204 N.J. Super. 415 (1985)
499 A.2d 235
MARVIN KOPP, LARRY KOPP AND STANLEY BERG, D/B/A 90 MAIN STREET ASSOCIATES, PLAINTIFFS-APPELLANTS,
v.
NEWARK INSURANCE COMPANY, [INCORRECTLY REFERRED TO AS THE ROYAL INSURANCE COMPANY], DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 14, 1985.
Decided May 30, 1985.
*417 Before Judges MICHELS, PETRELLA and BAIME.
Rosner and Feltman, attorneys for appellants (Keith E. Paterson, of counsel and on the letter brief).
Geibel & Geibel, attorneys for respondent (Philip C. Geibel, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiffs Marvin Kopp, Larry Kopp and Stanley Berg, d/b/a 90 Main Street Associates, appeal from a judgment of involuntary dismissal entered by the Special Civil Part in favor of defendant Newark Insurance Company at the conclusion of the presentation of their proofs in this insurance coverage case.
The facts giving rise to this appeal are not in substantial dispute. Plaintiffs are the owners of a building located at 90 Main Street in Hackensack, New Jersey. On the evening of January 18, 1983, Willie B. Whitfield, a maintenance person, *418 was working in the building. No one else was in the building at the time and the outside doors were locked. Whitfield used the elevator to go to the third floor of the building where he began to do his maintenance work, specifically emptying the garbage. He then took the elevator to the second floor, but when he arrived at the second floor the elevator door would not open. Whitfield remained in the elevator from 8:45 p.m. on January 18, 1983, until 7:00 a.m. on January 19, 1983, when he was eventually found locked in the elevator by a friend who was looking for him. The friend, realizing that Whitfield was locked in the elevator, summoned the police, who in turn summoned the fire department. The fire department eventually pried open the door and freed Whitfield, who was then taken by ambulance to the local hospital.
According to Whitfield, the operating panel in the interior of the elevator was damaged when he removed several screws while trying to open the door. Larry Kopp, one of plaintiff's partners, testified that when he arrived at the building on the morning of January 19, 1983, he observed that the door bucks or frames in the basement and on the first floor were bent, the elevator control panel was ripped off and wires were hanging out, and part of the ceiling in the elevator was down. In addition, Kopp found that the elevator door was bent. George Buvis, the repair manager of Atlantic Elevator Company, the company which serviced the elevator in the building, was of the opinion that a metal object inserted between the door buck and the door caused the door to bend.
Plaintiffs notified defendant of the loss and made demand under the latter's Special Multi-Peril Policy issued to them for the $4,982.66 allegedly expended to repair the damage caused in trying to extricate Whitfield from the elevator. Defendant denied coverage, and plaintiffs instituted this suit. At the conclusion of plaintiffs' proofs, the trial court granted defendant's motion for a judgment of involuntary dismissal. The trial court reasoned, in part, that "the exclusion in the policy for a *419 breakdown in mechanical equipment would exclude coverage in this particular case...." This appeal followed.
We are of the view that the trial court erred in granting defendant's motion. The test to be followed in ruling on a motion for a judgment for involuntary dismissal was clearly set forth by our Supreme Court in Dolson v. Anastasia, 55 N.J. 2 (1969), as follows:
In the case of motions for involuntary dismissal, the test is ... whether "the evidence, together with the legitimate inferences therefrom, could sustain a judgment in * * * favor" of the party opposing the motion, i.e., if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. Bozza v. Vornado, Inc., 42 N.J. 355 (1964); Bell v. Eastern Beef Co., 42 N.J. 126 (1964); Franklin Discount Co. v. Ford, 27 N.J. 473, 490 (1958). The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion. [at 5-6].
In light of the foregoing we are convinced that plaintiffs' proofs were sufficient to present a prima facie case of coverage under the Special Multi-Peril Policy issued to them by defendant. The policy covered plaintiffs' buildings, including the fixtures, machinery and equipment constituting a permanent part of, and pertaining to, the service of the building. This clearly included coverage for the elevator. The pertinent coverage provisions of the policy read as follows:
V. PERILS INSURED AGAINST  This policy insures against all risks of direct physical loss subject to the provisions and stipulations herein and in the policy of which this form is made a part.
VI. EXCLUSIONS  This policy does not insure under this form against:
* * * * * * * *
E. Loss caused by:
1. wear and tear, deterioration, rust or corrosion, mould, wet or dry rot; inherent or latent defect; smog, smoke, vapor or gas from agricultural or industrial operations; mechanical breakdown, including rupture or bursting caused by centrifugal force; settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings; animals, birds, vermin, termites or other insects; unless loss by a peril not otherwise *420 excluded ensues and then the Company shall be liable for only such ensuing loss. [Emphasis supplied].
Our function in construing a policy of insurance, as with any other contract, is to search broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes thereof. See Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 567 (1962); Tooker v. Hartford Acc. & Indem. Co., 128 N.J. Super. 217, 222-223 (App.Div. 1974); Ins. Co. of State of Penna. v. Palmieri, 81 N.J. Super. 170, 179 (App.Div. 1963), certif. den., 41 N.J. 389 (1964). In this pursuit a broad and liberal view should be taken so that the policy is construed in favor of the insured. If the language of a policy will fairly support two meanings, an interpretation in support of coverage should be applied. Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482 (1961); Last v. West American Ins. Co., 139 N.J. Super. 456, 460 (App.Div. 1976); Corcoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234, 243 (App.Div. 1975). In addition, we must also be mindful of the corollary rule of construction that if a clause in question is one of exclusion or exception designed to limit the protection afforded by the general coverage provisions of the policy, a strict interpretation is in order. Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576 (1970); Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7-8 (1961). Finally, there is the settled principle that purchasers of insurance are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. And, as pointed out by our Supreme Court in Kievit v. Loyal Protective Life Ins. Co., supra, 34 N.J. at 482, "their policies should be construed liberally in their favor to the end that coverage is afforded to the full extent that any fair interpretation will allow."
With these principles in mind there cannot be the slightest doubt that plaintiffs were entitled to coverage under the broad language of the Special Multi-Peril Insurance Policy for the damage caused by Whitfield in trying to open the elevator door and by the fire department in prying open the door in *421 order to extricate Whitfield from the elevator. The Special Multi-Peril Policy, unlike the common named peril policy, created a special type of insurance extending to all losses of a fortuitous nature which are not the result of fraud or other intentional conduct of the insureds and which are not expressly excluded from coverage. Cf. 43 Am.Jur.2d, Insurance, § 505 at 580-581; 5 Appleman, Insurance Law and Practice (Rev'd 1970), § 3181 at 566-567. Although the costs necessary to repair the mechanical breakdown of the elevator were expressly excluded by the policy, the damages to the elevator occurring thereafter in the attempt to free Whitfield fell within the broad general coverage provided by defendant's Special Multi-Peril Policy. Moreover, the exclusion for mechanical breakdown did not apply to the loss here because the loss "ensued" after the mechanical breakdown from a "peril not otherwise excluded."
Finally, contrary to the trial court's conclusion, plaintiffs offered sufficient credible evidence to establish a prima facie loss within the coverage of the policy, thereby casting the burden of proving that the loss fell within the exclusionary provisions of the policy upon defendant. See Advance Piece Dye Works, Inc. v. Travelers Indem. Co., 64 N.J. Super. 405, 411 (App.Div. 1960); Jewelers Mutual Insurance Co. v. Balogh, 272 F.2d 889, 891-892 (5th Cir.1959). In any event, reasonable minds could reach different conclusions on the coverage issue, mandating the denial of defendant's motion for a judgment of involuntary dismissal. In reaching this conclusion we fully appreciate plaintiffs' failure to establish by competent evidence any specific monetary loss over and above nominal damages.
Since we reverse the judgment in favor of defendant and remand the matter for a new trial, we deem it appropriate to point out that on retrial plaintiffs should be permitted to present the testimony of Steven Herring, an employee of the Atlantic Elevator Company, or such other persons as they deem necessary to prove the extent and dollar amount of the damages *422 caused by Whitfield and the fire department. Consequently, plaintiffs are hereby granted leave to amend their answers to interrogatories to include the name of Steven Herring and/or such other persons to be named by them within 15 days of this opinion and mandate, and defendant is hereby afforded a reasonable opportunity thereafter to take the deposition of such persons upon written questions or upon oral examination.
Accordingly, the judgment under review is reversed and the matter remanded to the trial court for a new trial. We do not retain jurisdiction.