ORITANI SAVINGS & LOAN ASSOCIATION, a corporation organized under the Banking Laws of New Jersey, Plaintiff,

v.

FIDELITY & DEPOSIT COMPANY OF MARYLAND, Defendant.

Civ. A. No. 89–5355(HAA).

United States District Court, D. New Jersey.

Oct. 3, 1991.

## OPINION

HAROLD A. ACKERMAN, District Judge.

This is a declaratory judgment action in which the plaintiff, Oritani Savings & Loan Corporation, ("Oritani"), seeks a ruling that the defendant, Fidelity & Deposit Company of Maryland, ("Fidelity"), is obligated to indemnify it under a Savings and Loan Blanket Bond. Presently before the Court is a motion by Fidelity for partial summary judgment dismissing the Third Count of plaintiff Oritani's Amended Complaint, or in the alternative seeking leave to file a Third–Party Complaint against John Rowe. I will decide this matter on the papers without oral argument as permitted by Federal Rule of Civil Procedure 78.

### Procedural History

The parties have twice previously appeared before this Court. On July 9, 1990, the Court denied Fidelity's motion for summary judgment, holding, inter alia, that Oritani's complaint could be said to have asserted a claim under Insuring Agreement (A) and that as a question of fact existed as to whether Insuring Agreement (A) provided coverage in the matter, summary judgment was inappropriate.[1] *Oritani Savings & Loan Association v. Fidelity & Deposit Company of Maryland*, 741 F.Supp. 515, 524 (D.N.J.1990.) The parties again appeared before the Court in October, 1990 on Fidelity's motion for reconsideration of this Court's June, 1990 decision denying their motion for summary judgment, and on the Oritani Cross–Motions for summary judgment and leave to amend the Complaint to unambiguously assert a claim under Insuring Agreement (A) of the bond. Fidelity asserted three grounds in support of its motion for reconsideration, including, that the Court had erred in finding that a question of fact exists as to whether coverage is afforded under

Insuring Agreement (A) of the blanket bond. Fidelity contended that the Court had misapplied the case of *National Newark & Essex Bank v. American Insurance Co.*, 76 N.J. 64, 385 A.2d 1216 (1978) in interpreting Insuring Agreement (A) of the Oritani bond because the language in National Newark differs from that of Insuring Agreement (A). Specifically, the bond in National Newark lacked the definition of "Dishonest and Fraudulent Acts" present in Insuring Agreement (A) of the Oritani bond. This Court rejected Fidelity's first two grounds for reconsideration, and about the contention that the Court misapplied National Newark, concluded that:

> In light of the difficulty of the issue, the absence of controlling authorities, and the fact that it is wholly unnecessary for me to decide it, (since I have already decided that there is coverage under section (B)), I decline to rule on this issue at this time.

*Oritani*, 744 F.Supp. at 1316. Consequently, the Court denied Fidelity's motion for reconsideration, granted Oritani's motion for partial summary judgment, and granted Oritani's motion for leave to amend. *Oritani Savings and Loan Association v. Fidelity & Deposit Company of Maryland*, 744 F.Supp. 1311 (D.N.J.1990).

Presently, the Court has once again been asked to consider Fidelity's motion for summary judgment holding that no coverage is afforded under Insuring Agreement (A) of the blanket bond. In light of what counsel for Fidelity have correctly pointed out to be the misapplication of *National Newark & Essex Bank v. American Insurance Co.*, in my prior opinion (See *Oritani*, supra, 741 F.Supp. at 524), and for the reasons set forth below, I find that summary judgment in favor of Fidelity, the defendant, is appropriate. I have no need to discuss the factual background out of which these claims arise, as it

---

1. In this opinion, I also held that Oritani is entitled to coverage under Insuring Agreement (B) of the blanket bond; however, I declined to enter summary judgment in favor of Oritani, because Oritani had not moved for such relief and additional defenses may have been asserted by Fidelity. See Oritani, 741 F.Supp. at 524. Subsequently, Oritani did move for summary judgment asserting that coverage existed under

Insuring Agreement (B) of the bond and that Fidelity had advanced no meritorious defenses; Fidelity advanced six affirmative defenses in opposition. As I found Fidelity's defenses meritless I entered summary judgment in favor of Oritani under Insuring Agreement (B) of the bond, in the amount of $146,750.00. See *Oritani*, 744 F.Supp. at 1318.

has been completely set forth in this Court's July 1990 opinion. See *Oritani*, supra, 741 F.Supp. at 517–519.

### Fidelity's Motion for Partial Summary Judgment

Fidelity, the defendant, is moving for partial summary judgment on Count Three of the plaintiff's Amended Complaint, in which the plaintiff seeks recovery under Insuring Agreement (A). The issue to be decided is whether the "Dishonest or Fraudulent Acts" clause of this blanket bond, including its definition of dishonest and fraudulent acts, covers the loss resulting from an act by an employee which complies with all company policies and was undertaken without the intent to cause loss to the bank or to financially benefit himself. The clause, contained in Insuring Agreement (A), provides:

> Loss resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others.
>
> Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent
>
> (a) to cause the Insured to sustain such loss, and
>
> (b) to obtain financial benefit for the Employee or for any other person or organization intended by the Employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment.

See Brief in Support of Defendant's Motion for Partial Summary Judgment, Exhibit F.

Fidelity contends that Insuring Agreement (A) only covers that specific loss which the employee dishonestly or fraudulently intended to cause his employer, and then only if, in causing that loss, the employee had the subjective intent to cause that loss by his deliberate fraudulent or dishonest conduct with the deliberate intent of gaining a benefit for himself or for someone else whom he intended should receive the benefit. The defendant further argues that as Oritani's admissions establish that John Rowe can be accused of no more than negligence or poor judgment,

that he followed all company procedures, and that he did not intend to cause Oritani loss or to benefit himself, the loss is not covered by the bond as a matter of law.

Oritani, the plaintiff, contends that an issue of fact exists as to whether the plaintiff is entitled to coverage under Insuring Agreement (A). Oritani argues that the "manifest intent" to cause loss to the Insured, and gain to the employee or a third party required under the bond encompasses both actions taken by the employee with the subjective intent to act dishonestly or fraudulently and cause loss, and those actions which, though taken without the subjective intent to act dishonestly and cause a loss, are nonetheless sufficiently reckless or wanton about causing a loss that intent may be inferred. Oritani further argues that a fact issue exists as to whether Mr. Rowe's conduct was sufficiently reckless to warrant coverage under the bond.

### A. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that "judgment ... shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c). Put differently, "summary judgment may be granted if the movant shows that there exists no genuine issues of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hospital*, 843 F.2d 139, 143 (3rd Cir.1988), cert. denied, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). A fact is material if it influences the outcome under the governing law. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party has the initial burden of production; they must make a prima facie showing that they are entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Peters Twp. School Dist. v. Hartford Acc. & Indemn.*, 833 F.2d 32, 34 (3d Cir. 1987). Once such a showing is made, the

burden switches and the nonmoving party must show the moving party is not entitled to summary judgment. In opposing summary judgment, the nonmoving party cannot rely upon the allegations of his pleadings; he must come forward with evidence supporting a claim that there is a material fact in dispute to be resolved by the trier of fact. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). All inferences to be drawn from the facts should be resolved in favor of the nonmoving party. *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987). The burden of persuasion is stringent and remains on the moving party. If there remains any doubt as to whether a trial is necessary, summary judgment should not be granted. See *Celotex Corp.*, 477 U.S. at 330–33, 106 S.Ct. at 2556–58; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–61, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970).

Because jurisdiction in this case is founded on diversity of citizenship, I am bound to apply New Jersey law to the present controversy. See *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Wilson v. Asten–Hill Manufacturing Co.*, 791 F.2d 30, 32 (3d Cir.1986). Under New Jersey law, the construction of contracts is a question of law for the court. *Northeast Custom Homes, Inc. v. Howell*, 230 N.J.Super. 296, 301, 553 A.2d 387 (Law Div.1988). Ultimately, at trial, the Court must instruct the jury as to what coverage the policy provides. *Davis v. Equitable Life Assur. Soc.*, 90 N.J.Super. 328, 331, 217 A.2d 459 (App.Div.1966). However, ordinarily the issue of whether the employee's act was dishonest within the bond coverage is for the jury to decide unless the facts reasonably permit of but a single conclusion. *Mortgage Corp. of N.J. v. Aetna Cas. & Surety Co.*, 19 N.J. 30, 38, 115 A.2d 43 (1955).

The precise language contained in the "Dishonest and Fraudulent Acts" clause of the Oritani bond has apparently never before been interpreted by any court in the state of New Jersey.[2] Thus, under *Erie Railroad Co. v. Tompkins*, supra, I must predict how the New Jersey State Supreme Court would rule on this issue if presented with it. *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110, 117 (3rd Cir.), cert. denied, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987). In forecasting how the state Supreme Court would rule, dicta or lower state court decisions are "indicia of how the state's highest court might decide." *Pennsylvania Glass Sand v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3rd Cir.1981); *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3rd Cir.), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). In the absence of lower court opinions, "[t]he policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform our analysis. In addition, we may consult treatises, the Restatement, and the works of scholarly commentators." *Pennsylvania Glass*, 652 F.2d at 1167. See also *McKenna*, supra at 662; *Aloe Coal*, supra, at 117; *McNeilab, Inc. v. North River Ins. Co.*, 645 F.Supp. 525, 532 & n. 9 (D.N.J.1986), aff'd, 831 F.2d 287 (3d Cir.1987).

2. In *Oritani Savings and Loan v. Fidelity and Deposit Co.*, 741 F.Supp. 515 (D.N.J.1990), this court, relying on *National Newark*, supra, denied Fidelity's motion for summary judgment that no coverage is provided for Oritani's claim under Insuring Agreement (A), holding that an issue of fact existed as to whether the acts of the employee in question were dishonest within the meaning of the bond and thus covered by it. In its brief in support of its motion for reconsideration, Fidelity correctly pointed out that the language of the bond under which Oritani receives coverage differs from that considered in National Newark, in that Insuring Agreement (A) of the Oritani bond defines "Dishonest and Fraudulent Acts." Thus Fidelity argued that *National New-* *ark*, supra, had been misapplied and that the construction of the language in the Oritani bond was a case of first impression in New Jersey. However, as this Court found that deciding this difficult issue in the absence of controlling authority was unnecessary, it declined to do so at that time. 744 F.Supp. at 1316. However, as the defendant, Fidelity has again moved for summary judgment, dismissing Count Three of the plaintiff's Amended Complaint as no coverage exists under Insuring Agreement (A) of the bond, and as I now find that National Newark was previously misapplied, I must consider Fidelity's motion for summary judgment anew, apparently without binding precedent from the New Jersey Supreme Court.

As there are no lower court decisions interpreting this precise language I must look to New Jersey policies concerning insurance and cases in other jurisdictions interpreting identical language in order to predict what the New Jersey Supreme Court would decide. Under New Jersey law, insurance contracts are generally considered to be "contracts of adhesion, prepared unilaterally by the insurer, and have always been subjected to careful judicial scrutiny to avoid injury to the public." *Sparks v. St. Paul Ins. Co.,* 100 N.J. 325, 335, 495 A.2d 406 (1985). It has long been the policy in New Jersey that

> [i]f the controlling language [of the policy] will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied. Courts are bound to protect the insured to the full extent that any fair interpretation will allow.... [D]oubts as to the existence of coverage must be resolved in favor of the insured.

*Mazzilli v. Accident & Cas. Ins. Co.,* 35 N.J. 1, 7-8, 170 A.2d 800 (1961); *Kopp v. Newark Ins. Co.,* 204 N.J.Super. 415, 420, 499 A.2d 235 (App.Div.1985). This settled rule of law that doubts and ambiguities must be resolved in favor of coverage extends to fidelity bonds issued to banks. *Fidelity & Deposit Co. of Md. v. Hudson United Bank,* 653 F.2d 766, 772 n. 8 (3d Cir.1981). Moreover, even if the contract language is not necessarily ambiguous, the insurance contract should be interpreted in accordance with the reasonable expectations of the insured. See *Sparks,* supra, 100 N.J. at 336-38, 495 A.2d 406; *Meier v. New Jersey Life Ins. Co.,* 101 N.J. 597, 612, 503 A.2d 862 (1986) (courts will enforce only the restrictions and the terms in an insurance contract that are consistent with the objectively reasonable expectations of the average insured). See also *Perrine v. Prudential Ins. Co.,* 56 N.J. 120, 126-7, 265 A.2d 521 (1970); *Gerhardt v. Continental Ins. Co.,* 48 N.J. 291, 297-300, 225 A.2d 328 (1966); *Killeen Trucking v. Great Am. Surplus Lines Ins. Co.,* 211 N.J.Super. 712, 716-17, 512 A.2d 590 (App.Div.1986).

## B. Discussion

Plaintiff, Oritani, relies on this New Jersey policy of construing ambiguities in favor of coverage, and argues that the phrase "manifest intent" in Insuring Agreement (A) is susceptible of two interpretations. Oritani, based on a discussion distinguishing "motive" from "intent", contends that the bond's requisite "manifest intent" to cause loss could be interpreted to mean that coverage extends both to cases where the employee intended to cause loss to the insured, and to those situations where, though the employee had no subjective intent to cause loss to the insured, it was sufficiently objectively foreseeable that loss would result from his conduct that his behavior rose to the level of recklessness. I am unpersuaded by this argument, however, because I feel the plaintiff takes the phrase "manifest intent" out of context and ignores the rest of the definition of fraudulent or dishonest acts. The Insuring Agreement states:

> Dishonest or fraudulent acts as used in this Insuring Agreement shall mean *only dishonest or fraudulent acts* committed by such Employee with the manifest intent
>
> > (a) to cause the Insured to sustain such loss, *and*
> >
> > (b) to obtain financial benefit for the Employee or for any other person ...

I feel that it unduly strains the language of the Insuring Agreement to construe the definition to include acts undertaken by the employee with no dishonest motive or intent to cause loss to the insured and to secure gain for himself. Thus I see no ambiguity in the controlling language of the bond. It seems clear that the provision was meant to cover only those actions taken by an employee with some degree of dishonest intent to secure a benefit for himself or another and cause a loss to the insured. In the absence of an ambiguity, the New Jersey policy set forth in *Mazzilli* and *Kopp,* supra, is inapplicable. See *Mazzilli,* 35 N.J. at 7-8, 170 A.2d 800; *Kopp,* 204 N.J.Super. at 470, 499 A.2d 235. Moreover, as Oritani cannot reasonably expect to recover under an Insuring Agreement providing coverage for "Dishonest or Fraudulent Acts" when they admit that the employee in question acted with a "pure

heart," followed all company policies, and had no intention to cause the company a loss or to secure a gain for himself, the Sparks line of cases does not apply. See Oritani Opposition Brief, p. 8; Plaintiff's Answers to Defendant's Second Demand for Admissions; *Sparks*, supra, 100 N.J. at 336–38, 495 A.2d 406; *Meier*, supra, 101 N.J. at 612, 503 A.2d 862.

Other jurisdictions, interpreting identical language defining dishonest and fraudulent acts in similar blanket bonds, have found that coverage under the bond requires a showing that the employee not only committed a dishonest act, but that he did so with the subjective intent: 1) to cause his employer loss and 2) to incur a benefit for himself or confer it on a third party. While such precedent is clearly not binding on me, it is persuasive. In *Glusband v. Fittin Cunningham & Lauzon, Inc.*, 892 F.2d 208 (2d Cir.1989), it was held that an investment adviser's purchase of naked call options which the court characterized as "reckless and imprudent" and which resulted in large losses for the employer, was not covered under the bond because the employee lacked the requisite manifest intent to cause loss to his employer and to benefit himself. Id. at 210. See *Leucadia, Inc. v. Reliance Ins. Co.*, 864 F.2d 964, 972 (2d Cir.1988), cert. denied, 490 U.S. 1107, 109 S.Ct. 3160, 104 L.Ed.2d 1023 (1989), (holding an employee's authorization of loans to uncreditworthy borrowers was not covered by the bond because the employee lacked the requisite manifest intent to cause loss to his employer and to secure a gain for himself). In *Municipal Securities v. Ins. Co. of North America*, 829 F.2d 7 (6th Cir.1987), the court held that a trader's violation of inventory limits in an effort to cover up large trading losses that would otherwise have threatened her job security, was undertaken without the required intent to cause loss to the employer and thus was not covered under the bond. The Court explained:

> Ms. Hargrave's [the trader's] manifest intent was to make money. She intended to violate her standing orders, to be sure, but not for the purpose of causing a huge loss. Ms. Hargrave's deposition testimony established without contradiction that her purpose was to eradicate the losses, not to increase them.

Id. at 9. These cases illustrate that other jurisdictions have not found the same language ambiguous, and that it has universally been interpreted to exclude reckless or negligent acts from coverage; I find them very persuasive.

As I find that Insuring Agreement (A) unambiguously covers only those dishonest or fraudulent acts undertaken by employees with the subjective intent both to cause loss to the insured and to secure a gain for themselves or a third party; and as the plaintiff, Oritani, has admitted that John Rowe, the employee in question, acted with a "pure heart" and without the intent to cause the company loss or to benefit himself or another, I find that Fidelity has met their burden by proving that no genuine issues of material fact exist. See *Celotex*, supra, 477 U.S. at 327, 106 S.Ct. at 2554. Accordingly, the bond does not cover Mr. Rowe's actions and Fidelity is entitled to summary judgment as a matter of law.

As I have found that partial summary judgment in favor of the defendant is warranted, the relief the defendant sought in the alternative, to file a third party complaint against John Rowe, is rendered moot.

**Conclusion**

For all of the above stated reasons, I will grant the defendant's motion for partial summary judgment dismissing Count Three of the plaintiff's Amended Complaint. The defendant's motion in the alternative, to file a third-party complaint against John Rowe is denied.