**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2887-18T1

CHURCHILL CORPORATE
SERVICES, INC.,

      Plaintiff-Appellant,

v.

ROCKHILL INSURANCE
COMPANY and STATE AUTO
INSURANCE COMPANIES,

      Defendants-Respondents.

_____

Argued November 18, 2019 – Decided May 6, 2020

Before Judges Fasciale, Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2344-17.

Ryan Milun argued the cause for appellant (The Killian Firm PC, attorneys; Eugene Killian and Ryan Milun, on the briefs).

John J. Iacobucci, Jr. argued the cause for respondents (Ropers Majeski Kohn & Bentley, attorneys; John J. Iacobbucci, Jr., on the brief).

PER CURIAM

Plaintiff Churchill Corporate Services, Inc. appeals from the Law Division's two January 29, 2019 orders granting its commercial liability insurer, defendant Rockhill Insurance Company's motion for summary judgment, denying plaintiff's cross-motion for the same relief, and dismissing its complaint with prejudice. Plaintiff filed its complaint seeking reimbursement for amounts it paid to its landlord, Vornado Charles E. Smith, L.P. (Vornado), for losses arising out of a fire at premises that plaintiff leased. Plaintiff made the payment after defendant found no evidence that plaintiff caused the fire, and without informing defendant in advance that it was paying Vornado. According to plaintiff, it made the payment because it was legally obligated to do so, even though Vornado never filed a lawsuit against plaintiff. Judge Thomas F. Brogan relied on the language of defendant's policy and concluded that plaintiff did not have a legal obligation to pay Vornado and therefore plaintiff was not entitled to reimbursement from defendant. We affirm substantially for the reasons expressed by Judge Brogan in his oral decision that was placed on the record on the same date he entered the orders under appeal.

The material facts viewed in the light most favorable to plaintiff were generally undisputed. Plaintiff provides national corporate housing services to

its clients at locations it leases for their use. In connection with its business, plaintiff secured from defendant a liability policy for the period beginning September 1, 2015 through September 1, 2016. Under the policy, coverage was provided for each "occurrence." The policy defined "occurrence" as "an accident." It remained defendant's "right and duty to defend [plaintiff] against any 'suit' seeking those damages."

Also, the policy described defendant's obligation to pay a claim as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . [W]e will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> [(Emphasis added).]

As to claims asserted against plaintiff for which coverage was provided, the policy prohibited plaintiff from "voluntarily mak[ing] a payment, assum[ing] any obligation, or incur[ring] any expense, other than for first aid, without [defendant's] consent." It was left to defendant's "discretion, [to] investigate any 'occurrence' and settle any claim or 'suit' that may result."

3                                                                    A-2887-18T1

The policy also contained several exclusions from coverage. Specifically, it provided that insurance would not apply to "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages . . . [t]hat the insured would have in the absence of the contract or agreement." (Emphasis added).

During the policy period, and relative to its business, plaintiff rented several residential units from Vornado in a building located in Arlington, Virginia. Under its lease, plaintiff was obligated to "not deliberately, negligently, or otherwise destroy, deface, damage . . . the premises or permit any person to do so. If any such damage occurs, then you shall be liable for the cost of repair or maintenance to any such damaged part of the premises." Further, "[i]n the event there is damage to the rental unit which is not caused by the deliberate act of or through [plaintiff] or [its] guest's negligence on the premises, then [Vornado would] repair the damage."

The fire at one of the units plaintiff leased, but which was not yet occupied, occurred on March 23, 2016, at approximately 3:06 p.m., after plaintiff had furnishings moved into it and its cleaning company, Supreme Cleaning Services (Supreme Clean), left the building. The local fire department

4

responded at 3:15 p.m., investigated, and determined that stove knobs were bumped by movers, causing a cardboard box on top of the stove to catch on fire. The building's visitors log showed that Supreme Clean's personnel were the last ones in the unit before the fire started.

After plaintiff notified defendant of the fire, on April 4, 2016, it began its investigation into the claim by having an examiner contact plaintiff to request additional information. In response, plaintiff provided information about delivery of the furniture, and a copy of a March 30, 2016 email from Supreme Clean, in which it denied any responsibility. The email explained that Supreme Clean never entered the particular unit and that its personnel left the building at approximately 1:45 p.m.

Thereafter, plaintiff followed up with defendant. It emailed defendant on April 14, 2016, requesting an update on the status of its claims, advised defendant that it was still paying rent, and stated that no repairs could be done until defendant provided an update. Five days later, defendant informed plaintiff that it retained an adjuster, Cunningham Lindsey U.S. Inc., to investigate the damage. Plaintiff requested that defendant expedite the process in order to avoid increasing the claim amount.

Following a visit to the property to inspect the damage, on May 6, 2016, Cunningham Lindsey's representative issued a report, and three days later, defendant requested further investigation, advising that the property's manager believed that plaintiff was responsible for the damage, but the fire report was not clear as to who actually caused the fire. The same day, defendant contacted plaintiff informing it that "[t]here were specific items that [it] sought in asking [Cunningham Lindsey] to do the investigation," which were not addressed in the report and that it followed up in order to resolve the original issues and ask new questions. Defendant added that "[t]he issue at hand is determining if [plaintiff] [was] truly responsible for the loss" and that Cunningham Lindsey should focus on this area to confirm liability "before any commitments are made on behalf of [plaintiff]."

Plaintiff contacted defendant again on June 2, 2016, for an update on the final damage cost for which it would be responsible. Defendant responded on June 27, 2016, explaining that Cunningham Lindsey did an investigation, but it had been unable to obtain the report. About one month later, plaintiff followed up for another update as well as for a claim number.

On August 5, 2016, defendant sent a letter to plaintiff stating that it was investigating the loss related to its third-party liability claim under a reservation

6

of rights, given that "some or all of the damages alleged may not be covered under the [insurance] policies." It noted that there were no claims brought against plaintiff of which it was aware. Defendant sent a separate email regarding the same and specifically noted that it was still not certain whether plaintiff was responsible for the fire. It added that Supreme Clean's employees were the last individuals in the unit before the fire and that "they most likely would have [had] more contact with the knob during their wiping and cleaning and could have easily bumped the knob." Defendant noted that Supreme Clean refused to discuss the matter with Cunningham Lindsey, which "raise[d] concerns." It notified plaintiff that Cunningham Lindsey would meet with Vornado in order to further clarify the liability and that if a claim was presented, based on the information at that point, defendant "would question liability and make no payment for the repairs to the unit."

In the meantime, Vornado began to pressure plaintiff to resolve its claim for the amounts it was owed as a result of the fire, which it calculated to be $78,025.66. On September 30, 2016, Vornado notified plaintiff that regardless of whether defendant provided coverage, plaintiff was still liable under the lease for the damages. In response, plaintiff informed Vornado that it determined through conversations with defendant that "the claim would be paid faster if

there was a . . . lawsuit" and asked if this was something that it would consider to expedite the process. Vornado was not interested in pursuing a lawsuit as it would result in legal fees that would only be added to the total damages it was owed. Vornado suggested that plaintiff pay its claim and then sue defendant for reimbursement.

After not receiving a response, Vornado emailed plaintiff at the end of October demanding payment in accordance with the lease. Thereafter, plaintiff and Vornado entered into negotiations that led to Vornado accepting a discounted amount from plaintiff, together with the unpaid rent for September through November. On November 18, 2016, plaintiff and Vornado entered into a release in exchange for plaintiff's payment of $73,693.96, which would be made in four separate payments.

On December 1, 2016, plaintiff requested reimbursement from defendant for payments made to Vornado. In a letter dated the following day, defendant rejected plaintiffs demand for several reasons. First, it stated that plaintiff voluntarily made the payment, which violated the terms of the policy. Second, defendant stated it determined, "there was no evidence that [plaintiff] was responsible or liable for the fire and subsequent damages." Defendant noted that Supreme Clean was the last entity in the unit before the fire and that one of its

8

employees bumped into or turned on the stove, igniting a box on top of it. It added that the policy included a provision that losses are paid based on plaintiff's culpability and noted that at the time of the fire, plaintiff was not present.

Defendant also rejected any argument that the lease agreement between plaintiff and Vornado was a basis for defendant to pay the claim. Specifically, it stated that lease agreement was separate and distinct from the insurance policy and "the lease agreement did not bind [plaintiff] to make payment in this loss." Moreover, the policy did not cover damages caused by Supreme Clean because it was not a "guest" under the lease or policy, and it continued to take the position that plaintiff was not responsible for the fire damage.

On July 18, 2017, plaintiff filed its complaint for declaratory relief and breach of contract. It requested judgment: "[d]eclaring and adjudging that [defendant] must provide insurance coverage . . . including reimbursement for the necessary settlement paid by [plaintiff] to . . . [Vornado]"; pre-judgment interest; consequential and incidental damages; and attorney's fees and other costs. Defendant filed its answer on October 13, 2017 denying plaintiff's allegations and asserting eleven affirmative defenses, including that plaintiff's "claims are barred, in whole or in part, by the terms and conditions of the insurance policy" and by plaintiff's "failure to adhere" to that policy. It also

maintained that any harm was the result of a third party over whom it had no control.

During discovery, depositions were taken of both parties' representatives. During defendant's claims representative's deposition, he testified that defendant did not deny coverage. Instead, it "denied liability, responsibility for [the] loss." He explained that since plaintiff did not have a responsibility to Vornado for causing the fire, there was no responsibility for defendant to pay Vornado for the damage.

After discovery concluded, defendant filed its motion for summary judgment. In its material statement of facts, it stated that Cunningham Lindsey determined that Supreme Clean most likely caused the fire, but acknowledged that "[a]t minimum, the actual cause of the [f]ire, and more particularly, the entity responsible for causing [it], was never conclusively determined." Plaintiff filed its cross-motion for summary judgment and a response to defendant's material statement of facts. It stated that Vornado threatened it with a lawsuit and threatened plaintiff's business "by refusing to rent other premises or allow tenants access if the fire damage issue was not resolved."

The parties appeared for oral argument before Judge Brogan on January 29, 2019. After considering the parties' arguments, the judge relied upon the

opinion in <u>Bacon v. American Insurance Co.</u>, 131 N.J. Super. 450, 458 (Law Div. 1974) ("Absent the presentation of proofs in a court of competent jurisdiction and a finding by the court or jury of liability, it cannot be said that the seller is 'legally obligated' to pay damages"), <u>aff'd o.b.</u>, 138 N.J. Super. 550 (App. Div. 1976), and granted defendant's motion, finding that plaintiff was not legally obligated to pay Vornado. Judge Brogan entered orders reflecting his decisions on the motions the same day. This appeal followed.

On appeal, plaintiff argues Judge Brogan should have analyzed defendant's duty to reasonably investigate and settle covered claims, instead of relying on the "legally obligated to pay" language in the policy. According to plaintiff, defendant breached its fiduciary duty to conduct a timely and thorough investigation. It contends that defendant did not investigate the fire claim in a timely manner and "aggressively pursue all available avenues to settle [the] claim" under its policy and under state law, including N.J.A.C. 11:2-17.7(c)(2) and the New Jersey Unfair Claims Settlement Practices Act (NJUCSPA), N.J.S.A. 17B:30-2.[1] It adds that defendant believed that Supreme Clean caused

_____

[1] NJUCSPA sets forth, in pertinent part, various actions by an insurer that would constitute "unfair claim settlement practices": They relate to a failure to pursue a prompt investigation, and where a claim is covered, a failure to pursue in good faith the settlement of that claim or "[f]ailing to promptly provide a reasonable

the fire rather than one of plaintiff's employees and that defendant failed to consider the lease between plaintiff and Vornado. We disagree.

We review de novo orders granting summary judgment and apply the same standard that governed the trial court's ruling. Lee v. Brown, 232 N.J. 114, 126 (2018). Summary judgment will be granted if, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Conley v. Guerrero, 228 N.J. 339, 346 (2017) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)); R. 4:46-2(c).

Here, the material facts are not in dispute, and the question raised on appeal is whether the motion judge erred by finding as a matter of law that defendant was not obligated to reimburse plaintiff for its payment to Vornado. We review such legal determination de novo. Templo Fuente De Vida Corp.,

---

explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." N.J.S.A. 17B:30-13.1(n).

N.J.A.C. 11:2-17.7, sets forth "[r]ules for prompt investigation and settlement of claims." Subsection (c)(2) states that "[u]nless a clear justification exists, or unless otherwise provided by law, the maximum payment periods for property/liability claims shall be . . . for all third party property damage claims, [forty-five] calendar days from receipt by the insurer of notification of claim."

224 N.J. at 199. In doing so, we owe the trial court no deference on its "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

In our review, we are guided by the principle that "[t]he relationship between an insurer and the insured is contractual." Ferrante v. N.J. Mfrs. Ins., Grp., 232 N.J. 460, 469 (2018).

> The language in the policy "underscores the basic notion that the premium paid by the insured does not buy coverage for all . . . damage but only for that type of damage provided for in the policy.' Thus, limitations on coverage . . . are designed 'to restrict and shape the coverage otherwise afforded."
>
> [Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 102 (2009) (first alteration in original) (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 237 (1979)).]

As a general rule, "[a]n insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). See also Hardy, 198 N.J. at 101-02. When an ambiguity does exist, the ambiguity is resolved against the insurer and in favor of coverage. Kopp v. Newark Ins., 204 N.J. Super. 415, 420 (App. Div. 1985). Also, where specific terms are not defined in a policy but are the subject of "judicial construction . . . made prior

13

to the issuance of a policy employing them will be presumed to have been the construction intended to be adopted by the parties." Morton Int'l, Inc. v. Gen. Accident Ins., 134 N.J. 1, 57 (1993) (quoting 2 George J. Couch, Couch on Insurance § 15:20 (2d ed. 1984)).

With those guiding principles in mind, we turn to the legal basis for the motion judge's decision – the opinion in Bacon. In that case, the defendant issued plaintiffs a comprehensive liability insurance policy. 131 N.J. Super. at 453. While the policy was in effect, one of the plaintiffs' customers suffered property damage caused by defects in a product that was sold and delivered by the plaintiffs. Ibid. The customer asserted a claim against plaintiffs and settled it by withholding payment from accounts it owed to plaintiffs. Id. at 454. Plaintiffs sought to recover the withheld amount under its liability policy with defendant. According to plaintiffs, they became legally obligated to their customer at the time the product was damaged and as such, defendant became liable. Ibid. Defendant, after conducting an investigation, disagreed and denied liability. Ibid.

In response to the plaintiffs' lawsuit and cross-motions for summary judgment, the trial court in Bacon explained that while "legally obligated" was

not defined in the parties' policy, the term "connotes an establishment of legal liability for payment of damages." Id. at 457. It added that:

> The test of this liability is not the existence of a remedy in the buyer against the seller . . . but a determination of responsibility for satisfying such a remedy. There is a clear implication in the language of [the policy] that payment by the insurer was predicated upon an adjudication of the insured's liability to pay "damages." . . . Absent the presentation of proofs in a court of competent jurisdiction and a finding by the court or jury of liability, it cannot be said that the seller is "legally obligated" to pay damages.
>
> [Id. at 457-58.]

Because the customer did not bring suit against plaintiff, the court determined that plaintiffs were not "legally obligated" to pay damages and thus, defendant was not liable to cover the payment. Id. at 458.

We affirmed the holding in Bacon based upon the trial court's reasoning. Federal courts have relied upon Bacon's holding that an insurer is not "legally obligated to pay" until a final judgment has been entered against an insured. See Permasteelisa CS Corp. v. Columbia Cas. Co., 377 Fed. Appx. 260, 263-65 (3d Cir. 2010); Wyndham Constr., LLC v. Columbia Cas. Ins., 208 F. Supp. 3d 599, 603-05 (D.N.J. 2016).

We discern no reason to abandon Bacon's holding in this matter under facts so similar to those in that case. Here, plaintiff voluntarily paid Vornado

A-2887-18T1

for the damages caused by the fire despite the latter never filing suit. No court determined that plaintiff was liable.[2] As such, because plaintiff was not legally obligated to pay Vornado, defendant was not required to pay plaintiff for the claim. Had plaintiff waited for Vornado to pursue its claim through a lawsuit, defendant may have been obligated to provide a defense, and then assert its claim that plaintiff was not responsible for the fire or determine whether to settle. Defendant's coverage did not, however, extend to plaintiff's contractual liability, only its negligence, if any.

We are not otherwise persuaded by plaintiff's reliance here on alleged defects in defendant's performance as its insurer. We conclude its related arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(e). Suffice it to say, defendant's obligations to investigate and settle Vornado's claim were voided by plaintiff's voluntary payment to Vornado, especially when plaintiff's liability for the fire was never established. While it might have made good business sense to settle with Vornado, plaintiff did so at the risk of not being able to recoup the payment from defendant, as a "liability policy does not transfer the risk of breach of contract from the insured to the insurer." Permasteelisa, 377 Fed. Appx. at 265; see also

---

[2] The rent owed by plaintiff was not a covered loss under any circumstances.

<u>Weedo</u>, 81 N.J. at 239; <u>Atl. Mut. Ins. v. Hillside Bottling Co.</u>, 387 N.J. Super. 224, 234 (App. Div. 2006).

Moreover, in any event, the record did not support a finding that defendant violated any of its contractual or statutory obligations to plaintiff. <u>See, e.g.,</u> <u>Griggs v. Bertram</u>, 88 N.J. 347, 364 (1982) (holding insurer liable for amount of judgment against insured that established insured being legally obligated to pay, where insurer wrongfully denied coverage); <u>see also</u> <u>Fireman's Fund Ins. v. Sec. Ins. Co. of Hartford</u>, 72 N.J. 63, 71 (1976) ("Where an insurer wrongfully refuses coverage and a defense to its insured, so that the insured is obliged to defend himself in an action later held to be covered by the policy, the insurer is liable for the amount of the judgment obtained against the insured or of the settlement made by him." (quoting <u>N.J. Mfrs. Indem. Ins. v. U.S. Cas. Co.</u>, 91 N.J. Super. 404, 407-08 (App. Div. 1966))). Defendant never disclaimed coverage or refused to defend.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2887-18T1