230 N.J. Super. 296 (1988)
553 A.2d 387
NORTHEAST CUSTOM HOMES, INC., PLAINTIFF,
v.
ALLAN P. HOWELL AND SUSAN HOWELL, DEFENDANT/THIRD PARTY PLAINTIFFS,
v.
NORTH AMERICAN REISS CORPORATION & WARD HOWELL INTERNATIONAL, INC., THIRD PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division Monmouth County.
Decided July 14, 1988.
*298 Robert Mahoney for plaintiff (Wilentz, Goldman & Spitzer, attorneys).
Howard D. Cohen for defendants, Allan P. Howell & Susan Howell (Gutkin, Miller, Shapiro, Selesner & Shoobe, attorneys).
*299 BASSLER, J.S.C.
This matter comes before the court on a motion and cross-motion for partial summary judgment.[1] The seller claims the purchasers' refusal to close constituted a breach of contract entitling it to the deposit. The purchasers seek to recover the deposit because of their inability to close due to revocation of the mortgage commitment by their lending institution.
The issue presented is a novel one: has a contract purchaser satisfied a mortgage contingency clause therefore requiring performance when a lending institution issues a commitment within the time period required by the contract but subsequently revokes the commitment through no fault of the purchaser? The answer is no. The purchasers are entitled to the return of the down payment.
The undisputed facts are as follows. On January 24, 1987, plaintiff, Northeast Custom Homes, Inc. (Northeast), a custom builder, entered into a contract for sale of a residence in the Borough of Rumson with the defendants, Allan and Susan Howell, husband and wife. (Howell) The purchase price for the house then under construction was $857,486. A deposit of $85,748 was paid to Northeast's counsel to be held in escrow pending the closing. The contract called for a closing date of April 1, 1987.
The critical language is as follows.

This contract is contingent upon buyer obtaining a conventional mortgage for $275,000 at the prevailing rate of interest and for a term readily available within 45 days of the date of this contract.... In the event the buyer does not obtain the commitment after applying therefor in accordance with the requirements above set forth on or before the expiration of the aforesaid 45 days, time for which shall be of the essence, either seller or buyer shall have the right to terminate this agreement, in which event the deposit shall be returned to the buyer and this Agreement will have no further force and effect.... Buyer represents to seller that he has sufficient money available to pay the purchase price, exclusive of the mortgage proceeds. [Emphasis supplied].
*300 Northeast acknowledges that its attorney prepared the contract for this specific property prior to any negotiations with Howell. The seller's realtor inserted the purchasers' names and the purchase price. After it was signed, the realtor referred Howell to an attorney to assist him with the closing.
The realtor did not suggest the standard attorney review clause. Howell, a Connecticut resident, had recently accepted a new position with a New Jersey corporation. His new employer lent him $85,748.60 for the down payment. A mortgage commitment (unconditional on its face) dated March 9, 1987, was issued by HWD Funding Corp. for the amount of $350,000 within the 45 day time period required by the contract  March 10, 1987.
On March 25, 1987, within 3 weeks of the date he started with his new employer, Howell was fired. On the same date Howell's employer demanded immediate payment of the $85,748.60 loan.
On March 30, 1987, HWD Funding Corp. terminated its mortgage commitment to Howell. By letter of March 30, 1987, Howell's counsel advised Northeast's counsel of Howell's inability to proceed to closing and that Howell because of his loss of employment was not in a position to obtain other financing. Northeast subsequently sold the property for $835,000.
Northeast argues that since the contingency period expired on March 10, 1987, and the Howells had not terminated their contract on or before that date Howell's failure to close title constituted a default for which Northeast is entitled to retain the deposit.
Howell's position is that through no fault of his own he was wrongfully terminated by his employer; the withdrawal of the mortgage commitment left him without funds to purchase the property.
Whether the seller is entitled to retain the deposit because the purchaser has breached the contract in failing to close, or the purchaser is entitled to the return of his deposit because of *301 his inability to obtain mortgage financing depends upon the legal meaning of the mortgage contingency clause. This calls for a construction by this court of the contract rather than its interpretation. Although courts often do not differentiate between "interpretation" and "construction" and use the terms interchangeably, there is a distinct difference in the two judicial functions. 4 Williston, Contracts (3 ed. Jaeger 1961) § 602 at 325. See also Restatement, Contracts § 226 at 172, Comment c.
"Construction, which may be usefully distinguished from interpretation, is a process by which legal consequences are made to follow from the terms of the contract and its more or less immediate context, and from a legal policy or policies that are applicable to the situation." Patterson, "Interpretation and Construction of Contracts," 64 Colum.L.Rev. 833, 835 (1964). [Emphasis supplied].
Professor Corbin describes the distinction as follows:
When a court gives a construction to the contract as that is affected by events subsequent to its making and not foreseen by the parties, it is departing very far from mere interpretation of their symbols of expression, although even then it may claim somewhat erroneously to be giving effect to the "intention" of the parties. 3 Corbin on Contracts 534 at 9 (1960) (footnotes omitted.) [Emphasis supplied].
When a court is filling gaps in the terms of an agreement, with respect to matters that the parties did not have in contemplation and as to which they had no intention to be expressed, the judicial process should not be called interpretation.... The most common sort of "gap" that must be filled is found when, long after the parties have made their agreement, an event occurs that they did not foresee. In determining its legal effect, as the Court must, the process may be called "construction," it should not be called "interpretation." 3 Corbin on Contracts, supra, § 544 at 11.[2]
The construction of the terms of a written contract is a matter of law for the court. Ram Const. Co., Inc. v. American States Ins. Co., 749 F.2d 1049 (3rd Cir.1984); Edge v. *302 Boardwalk Securities Corp., 115 N.J.L. 286, 290 (E. & A. 1935); Anthony L. Petters Diner, Inc. v. Stellakis, 202 N.J.Super 11, 27 (App.Div. 1985).
The purchasers did not unconditionally commit themselves to the purchase of plaintiff's property. The contract was expressly conditioned upon the Howells obtaining financing.
A mortgage contingency provision serves the interest of the buyer and the seller. It protects the buyer if he cannot obtain financing, and enables the seller to return the property promptly to the marketplace. Schultz v. Topakyan, 193 N.J. Super. 550, 553 (App.Div. 1984), certif. den. 99 N.J. 207 (1984). In technical terms satisfaction of the mortgage contingency clause is a condition precedent to the purchasers' obligation to buy the property. See Annotation, "Vendor and purchaser: contract provision referring to purchaser's uncompleted arrangement for financing balance of purchase price as creating condition precedent," 81 A.L.R.2d 1338 (1962).
The underlying assumption in this contract is that once the mortgage commitment issued the mortgage proceeds would be available at the closing. The mortgage contingency clause provides: "Buyer represents to seller that he has sufficient money available to pay the purchase price, exclusive of the mortgage proceeds." In paragraph 17 the purchasers commit themselves to an early closing if there is an early completion of the dwelling "... provided buyer has obtained a firm mortgage commitment and is otherwise able to close its mortgage within the time required by seller in its notice." Under paragraph 3 entitled "Purchase Price & Payment" the contract recites that "... Buyer agrees to pay the purchase price in the following manner:

*303
 Previously paid by Buyer $10,000.
 Within one day of signing this contract by all
 parties (balance of deposit) 75,748.
 From mortgage proceeds 275,000
 Balance to be paid at closing of title in cash,
 certified check, bank cashier's check or
 attorney's trust 496,738."
 account check [Emphasis supplied]

Certainly no one anticipated that once the buyer had obtained a mortgage commitment it would be subsequently withdrawn and that the buyer's termination of employment would render fruitless any further attempts to obtain a mortgage loan.
The financing condition is initially phrased in terms of the buyer "obtaining a conventional mortgage" and later as obtaining a commitment.
There are two possible legal meanings or effects to the mortgage contingency clause. One, advanced by the seller, that the financing condition is satisfied once the commitment letter is issued; the other, that the condition is satisfied only by the issuance of the commitment and by the availability at the closing of the mortgage proceeds which the commitment merely evidences. One construction leads to a breach of contract by the purchasers and the loss of their down payment in the amount of $85,748; the other relieves the purchasers of their obligation to perform and entitles them to a return of the down payment.
Courts should be particularly solicitous in protecting from forfeiture the down payments of innocent purchasers of residential real estate. Cf. Stevens v. Cliffs at Princeville Asso., 67 Haw. 236, 684 P.2d 965, 970 (1984).
The seller's argument that the contract is binding on the purchasers regardless of the unavailability of the mortgage proceeds frustrates "... one of the provision's basic purposes  the protection of the buyers from the consequences of financial incapacity." Schultz v. Topakyan, supra 193 N.J. Super. at 553.
*304 The court therefore construes the mortgage contingency clause to mean that not only the mortgage commitment but also the availability at closing of the mortgage proceeds together constitute the condition precedent to the purchasers' obligation to perform. To hold otherwise would result in a severe forfeiture or penalty. That result is indefensible, particularly where there has been no deliberate or flagrant failure to comply with the terms of the contract, Cf. Bertrand v. Jones, 58 N.J. Super. 273, 281 (App.Div. 1959), and an event has occurred which was not in the contemplation of the parties when they made the agreement.
This construction of the mortgage contingency clause to protect the purchaser's down payment is particularly compelling where the seller is a professional builder, the contract was prepared by the seller's attorney and in the possession of the seller's realtor who does not advise or insert in the contract the purchasers' right to an attorney review of the contract within three days, cf. N.J. State Bar Assoc. v. N.J. Assoc. of Realtor Boards, 93 N.J. 470 (1983), and where the purchasers are referred to an attorney only after execution of the contract. The purchasers, as residential buyers, could reasonably expect that they would not lose their deposit if through no fault of their own they did not have the mortgage proceeds to pay the purchase price.
A fundamental rule of construction also supports this court's conclusion that the mortgage contingency clause was not satisfied when the mortgage commitment was revoked without any fault of the buyer. Northeast prepared the contract. It is appropriate that the contract be construed most strongly against the party preparing the agreement where the language lends itself to two possible meanings. In re Miller, 90 N.J. 210, 221 (1982); See 4 Williston, supra, § 621 at 760; Patterson, supra, at 835.
A jurisprudential consensus also supports the legal postulate that where a financing condition is initially satisfied, but then *305 fails through no fault of the purchaser, the failure of the transaction should not be imposed upon the innocent purchaser. See Bruyere v. Jade Realty Corp., 117 N.H. 564, 375 A.2d 600 (1977); Stevens v. Cliffs at Princeville Assoc., supra; Blakley v. Currence, 172 Ind. App. 668, 361 N.E.2d 921 (1977); Century 21 Acadia Realty & Dev. v. Brough, 393 So.2d 287 (La. Ct. App. 1980).
Under the circumstances of this case the purchasers did not breach the contract of sale and are therefore entitled to a return of the deposit with interest. This disposes of the primary matter in issue. Plaintiff also claims that it is entitled to damages because the defendant misrepresented that it had a firm mortgage commitment. There is absolutely no merit to this allegation. The commitment letter issued directly from the lending institution. Although the commitment letter did not contain any explicit conditions, there was certainly an implied condition that there would be no substantial adverse change in the borrower's financial status between the date of the application and the date of closing. A lending institution will not provide a residential mortgage to a borrower who has just lost his job subsequent to the submission of the loan application.
Northeast's bare allegation of fraud in the face of Allan P. Howell's detailed affidavit explaining the circumstances surrounding the loss of his job and the loss of the mortgage commitment is insufficient to defeat Howell's motion for summary judgment. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954).
The claims of the plaintiff for "certain carrying costs" and "extras" depend upon whether or not the purchasers breached their contract. They did not. They were entitled to terminate the contract, which they seasonably did. Therefore these claims must also be dismissed.
Accordingly, summary judgment will be entered in favor of the defendants and the plaintiff's application denied.
Counsel should present a conformable order for judgment.
NOTES
[1] This Opinion supplements the court's oral opinion of June 24, 1988.
[2] For examples of judicial use of this distinction between interpretation and construction see Ram Const. Co., Inc., v. American States Ins. Co., 749 F.2d 1049 (3rd Cir.1984); John F. Harkins Co. v. Waldinger Corp., 796 F.2d 657 (3rd Cir.1986).