255 N.J. Super. 45 (1992)
604 A.2d 625
SHARON CONNELL, PLAINTIFF-RESPONDENT,
v.
JOSEPH PARLAVECCHIO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 18, 1992.
Decided March 20, 1992.
*47 Before Judges R.S. COHEN, ARNOLD M. STEIN and KESTIN.
Leonard F. Rappa argued the cause for appellant (Leonard F. Rappa on the brief).
Georgette E. David argued the cause for respondent (Buttermore, Mullen, Jeremiah & Phillips, attorneys, Georgette E. David on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
This is an action for damages by a contract seller of a home against the contract buyer and the real estate broker. The action against the broker was settled, and the seller prevailed against the buyer. We affirm in part and reverse in part.
The seller owned a home in Mountainside. She and the buyer executed a contract of sale for $290,000. The broker's contract contained two provisions of significance to this action. The first was a mortgage contingency clause which gave either party the right to void the contract if the mortgage loan *48 described in the contract  $90,000 on the $290,000 purchase price  had not been "arranged," or the contingency was not waived by the buyer, within 45 days. The other provision was a representation by the buyer "... that he has sufficient cash available (together with the mortgage or mortgages referred to in Section 3) to complete this purchase."
The buyer was a physician who practiced with his uncle. He had received assurances from his uncle of a loan of $200,000 in order to finance the home purchase. Before the contract was fully executed, however, the uncle offered to lend the buyer $289,000, the entire purchase price less the initial $1,000 deposit. As a result, the buyer did not apply for the $90,000 mortgage mentioned in the contract.
The seller was told about the change in the buyer's financing plans when she signed the contract. She understood that the buyer would get all of the money from his uncle and that the $90,000 mortgage contingency was therefore waived by the buyer. The buyer took the position at trial and before us that the seller orally agreed to a substitution of an "uncle contingency" for the written mortgage contingency.
Shortly after the contract was executed, the uncle was examined by a cardiologist, who found his coronary arteries to be dangerously clogged. As a result, the uncle immediately had triple bypass surgery. After the operation, he told the buyer that his economic future was now uncertain, and that therefore it was impossible for him to finance the house purchase. The buyer immediately applied for a $232,000 institutional mortgage, but was turned down for lack of sufficient income and cash to close. He then informally applied to a mortgage company, which advised him by telephone that he was not qualified for such a large mortgage.
Meanwhile, the seller, who did not know of the buyer's problem, committed herself to buy a house in Vermont, and accepted employment there as well. The buyer asked for a postponement of the agreed closing date to give him time to *49 solve his financial dilemma. The seller turned him down and made time of the essence for a closing twelve days later. The buyer was unable to close, and this litigation followed.
In a combination of rulings on motions, and in a verdict after a bench trial, the Law Division held that the buyer was obligated to perform, however innocent he was, and however legitimate his problems were. The essence of the decision was that seller did not agree to an "uncle contingency," the failure of which would excuse performance, and that the buyer's financing problems did not fall within the "impossibility" or "impracticability" defenses. We agree, and therefore affirm as to those matters.
The buyer's change of financing, from a $90,000 institutional mortgage to a loan of $289,000 from the uncle, was simply announced to the seller. She was not asked to approve it. She was not asked to agree that a refusal by the uncle to provide the money would have the same contractual consequence as failure of the $90,000 loan to be "arranged." She was not told that the buyer was going to try to get the money from his uncle, and that he could not perform if his uncle turned him down.
In these circumstances, the thesis that the seller agreed to a substitute contingency is defeated by the undisputed evidence. The buyer simply abandoned the $90,000 mortgage contingency contained in the contract. We need not deal with defendant's contention that an orally agreed-upon substitute contingency would constitute an impermissible modification of the written contractual provisions on the subject.
Impossibility or impracticability of performance are complete defenses where a fact essential to performance is assumed by the parties but does not exist at the time for performance. They are not defenses where the difficulty is the personal inability of the promisor to perform. See Duff v. Trenton Beverage Co., 4 N.J. 595, 73 A.2d 578 (1950); Restatement (Second) of Contracts § 261, cmts. b and e. Thus, real *50 estate purchasers who find they cannot perform have been held to their contractual obligations. Earlin v. Mors, 1 N.J. 336, 63 A.2d 531 (1949); Lincoln Bus Co. v. Jersey Mutual Casualty Ins. Co., 112 N.J. Eq. 527, 164 A. 867 (Ch. 1933); see also Kuhn v. Spatial Design, Inc., 245 N.J. Super. 378, 585 A.2d 967 (App.Div. 1991) (buyer procured his own inability to perform).
This case is not Northeast Custom Homes, Inc. v. Howell, 230 N.J. Super. 296, 553 A.2d 387 (Law Div. 1988). There, the contract contained a mortgage contingency; the buyer received a commitment from a lending institution; later, through no fault of the buyer, the lender withdrew the mortgage commitment. It was held that the buyer's performance was excused.
We need not say whether we would have decided that case the same way. It is enough to say that in the present case the buyer took upon himself the risk of the failure of his financial plans. He did not condition his performance on the loan from his uncle. Instead, he waived the $90,000 mortgage contingency contained in the contract. At the time he executed the contract, the buyer misrepresented his financial condition to the seller  no doubt in the good faith belief that everything was going to work out. He represented that he had sufficient "cash available" to close. That did not mean only that he had received a promise of secondary financing. It was a representation that he had the money on hand. He did not. Surely, it cannot reasonably be concluded that the seller signed a contract containing that representation, but agreed to sell her house for $1,000 down and $289,000 if the uncle could be convinced to lend it. Cf. True v. Lamarca, 252 N.J. Super. 439, 599 A.2d 1307 (App.Div. 1991) (buyers who represented that they had sufficient cash available were not excused from performing when the commitment they obtained to satisfy the mortgage contingency was not unconditional, but was conditioned on sale of buyers' current home, and they had not sold it when the day came to close on the new home).
*51 The Law Division judgment was for $29,000, the amount of the buyer's deposit required by the contract. Since the judgment was entered, the New Jersey Supreme Court has decided Kutzin v. Pirnie, 124 N.J. 500, 591 A.2d 932 (1991). It held that, at least in the absence of contrary contract provision, a breaching buyer is not barred from recovering the contract deposit to the extent it exceeds the seller's actual damages resulting from the breach. Both parties agree that retroactive application of Kutzin would require retrial of the damages issue under the principles of the new case. Plaintiff argues that we should not apply the new case retroactively.
We have determined that Kutzin should be applied retroactively, under the rules established in Rutherford Educ. Ass'n v. Board of Educ. of Rutherford, 99 N.J. 8, 22, 489 A.2d 1148 (1985). Cf. Grigoletti v. Ortho Pharmaceutical Corp., 118 N.J. 89, 570 A.2d 903 (1990) (because the decision altered the basic structure of employer/at-will employee relations, and was novel and unanticipated, it would not be given retroactive effect). The alteration in the measurement of damages resulting from Kutzin is not such a revolutionary change in the law or a frustration of settled expectations that should preclude retroactive application.
The judgment of the Law Division is affirmed, except as to damages. As to that issue, the judgment is reversed, and the matter is remanded for proceedings consistent with this opinion and with Kutzin. Plaintiff shall have the option to withdraw her stipulation limiting her damage claim to the $29,000 deposit contemplated by the contract.