**Potts v. Epler**

*Jeffrey Howell,* for plaintiffs.

*Scott C. Painter,* and *Terry D. Weiler,* for defendants Robert W. Epler and Gladys L. Epler.

*J. Kitridge Fegley,* for defendant Moore, McLain, Nally & Shumaker Inc.

ESHELMAN, *J.,* April 7, 1992—Defendant Moore, McLain, Nally & Shumaker Inc. has appealed from our order entered January 30, 1992, in the above-captioned matter which granted plaintiffs' motion for summary judgment. This opinion is in support of our order pursuant to Pa.R.A.P. 1925.

On or about January 28, 1991, plaintiffs, Mark C. Potts and Suzanne M. Potts, and defendants, Robert W. Epler and Gladys L. Epler, entered into a written agreement whereby Eplers agreed to sell and Pottses agreed to buy certain real estate owned by Eplers and situate at 145 Hillcrest Road, Mohnton, Berks County, Pennsylvania. Pursuant to the aforesaid agreement of sale, Pottses not only tendered to Moore McLain, as agent for Eplers, a down payment of $6,495 to be held in escrow by Moore, McLain until the time of settlement but also applied to Great Valley for a mortgage in the amount of $100,000.

On or about March 18, 1991, Great Valley advised Pottses in writing that their application for a mortgage had been approved subject to the terms and conditions set forth therein, which included a requirement that Pottses sell their own home prior to settlement. At that time Great Valley forwarded to Moore, McLain a copy of the aforesaid mortgage commitment letter.

On or before July 15, 1991, the time originally scheduled for settlement, Pottses notified Moore, McLain in writing that they had been unable to sign an agreement of sale for their own home and, consequently, would not be given final mortgage approval by Great Valley.

On August 6, 1991, Pottses commenced this action to recover the down payment after Eplers and Moore, McLain refused to return these monies. Pottses then filed a motion for summary judgment which was granted by this court.

In the absence of a specific meaning particularly designated within an agreement, courts interpret words used in a contract in accordance with their ordinary and usual meaning. *Pines Plaza Bowling Inc. v. Rossview Inc.*, 394 Pa. 124, 145 A.2d 672 (1958). A written agreement must be construed against the party who prepared it. *Ormond Realty v. Ninnis,* 341 Pa. Super. 101, 491 A.2d 169 (1984).

In the case sub judice, the agreement of sale required Pottses to "make written application for a mortgage immediately, and a 'firm' written mortgage commitment is to be approved within 60 days...." Pottses applied to Great Valley for a mortgage immediately and on March 18, 1991, Great Valley approved the application subject to three conditions:

"(1) At the settlement you [Pottses] must produce an insurance policy covering the above-captioned property with fire and extended coverage....

"(2) Subject to receipt of settlement sheet evidencing the sale of 173 Hillcrest Rd., Mohnton, Pa. [Pottses' home] and payoff of Citicorp Mortgage and Great Valley Savings Association Equity Loan.

"(3) Subject to receipt of satisfactory termite certification from a reputable contractor...."

The second condition, which obligated Pottses to sell their own home prior to settlement with Eplers, constituted a significant contingency which rendered the commitment subject to reconsideration by Great Valley.

Although research has revealed no Pennsylvania trial or appellate courts that have defined "firm" within the context of a mortgage commitment, courts in other states have interpreted similar provisions of agreements of sale and have concluded that a "firm" mortgage commitment is one which is unconditional. For example, in *McKenna v. Rosen,* 239 N.J. Super. 191, 570 A.2d 1277 (1990), the court held that the issuance of a conditional mortgage commitment constituted adequate grounds for prospective real estate purchasers to excuse performance of their obligations under an agreement of sale. Specifically, in *McKenna,* buyers and sellers entered into an agreement of sale which provided in pertinent part that:

"This agreement is contingent upon obtaining, by or for the purchaser, a firm written commitment for a ... mortgage.... The purchaser agrees to make immediate application for such financing.... If the mortgage commitment is not obtained by May 31, 1988, this contract shall be null and void...."

Buyers received a mortgage commitment which contained the following "proviso":

"Applicant/borrower to provide: Evidence that the sale of borrower's previous residence ... has been completed resulting in net proceeds of at least $90,000...." *Id. at 1278.*

The buyers did not sell their home and their attorney informed the sellers' attorney that the buyers would not be able to accept the bank's conditional commitment. The sellers refused to return the buyers' deposit. The purchasers filed suit and moved for summary judgment.

The appellate court, affirming the trial court's grant of summary judgment, reasoned that:

"It was or should have been clear to the sellers that what buyers wanted and needed was a loan that was

subject to no conditions or only conditions that were within their sole control.... It is inconceivable that any seller could believe that a buyer would agree to be bound by a contract if the loan commitment contained conditions beyond their sole ability to satisfy." *Id.* at 1279, quoting *Farrell v. Janik,* 225 N.J. Super. 282, 542 A.2d 59 (1988).

The *McKenna* court noted that the requirement for sale of the buyers' own home was not within the buyers' power to control. Accordingly, the bank's "proviso" rendered the commitment conditional, not "firm." The court also explained that not all contingencies imposed by a bank would make a commitment "less firm." For example, requiring buyers to produce verification of employment would not affect "firmness" because the buyer had the ability to control compliance.

The *McKenna* court concluded that:

"A purchaser has secured a firm commitment if any contingency is within his power alone to fulfill. If the fulfillment of the contingency is not within the sole control of the purchaser, the language of the contingent commitment should be interpreted to relieve him of his obligation under the realty contract. In such a case, *the purchaser clearly bargained for the right to void the land purchase contract when the contingency could not be met."* *Id.* at 1280. (emphasis added)

A mortgage commitment may also be considered not "firm" on the basis of "implied" conditions in the mortgage commitment letter. For example, in *Northeast Custom Homes Inc. v. Howell,* 230 N.J. Super. 296, 553 A.2d 387 (1988), buyers of certain real estate sued to recover their deposit from the sellers. The agreement of sale between the parties conditioned performance upon

buyers' procurement of a mortgage commitment, which the buyers did obtain. Subsequently, the bank revoked the commitment when the husband-buyer's employer fired him. Reasoning that the bank's commitment was subject to the implied condition that there would be no substantial adverse change in the borrowers' financial status between the date of application and the date of closing, the court held that the buyers' obligation to perform was subject to not only obtaining a mortgage commitment but also the availability at closing of the mortgage proceeds. Without satisfaction of both conditions, the court concluded, buyers had no duty to perform and were entitled to return of their deposit.

The Pennsylvania Superior Court reached an identical result in *Rosen v. Empire Valve & Fitting Inc.,* 381 Pa. Super. 348, 553 A.2d 1004 (1989), in which the prospective mortgagor withdrew a commitment prior to settlement. The *Rosen* court held that the revocation of a "firm" mortgage commitment excused performance by the buyers, who were entitled to return of their deposit.

In the case sub judice, Eplers resisted return of Pottses' down payment even though the Pottses were unable to control not only the imposition of Great Valley's contingency but also the sale of their own home. Traditionally courts have protected innocent buyers from forfeiture. See *Northeast Custom Homes Inc. v. Howell,* 553 A.2d at 391, and cases cited therein.

As noted above, Pottses were not able to sell their own home and to satisfy Great Valley's contingency, which rendered its commitment conditional and not "firm." Accordingly, Pottses were entitled to the return of their deposit, and our order which granted Pottses' motion for summary judgment was proper.