**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2430-20

HARTFORD UNDERWRITERS
INSURANCE COMPANY,

    Plaintiff-Respondent,

v.

ARCH-CONCEPT
CONSTRUCTION, INC. and
DUSAN LAZETIC, individually
and as President of
ARCH-CONCEPT
CONSTRUCTION, INC.,

    Defendants-Appellants.

_____

Argued May 2, 2022 – Decided June 29, 2022

Before Judges Rothstadt and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3851-16.

Kevin J. Kotch argued the cause for appellants (Ferrara Law Group, PC, attorneys; Ralph P. Ferrara and Kevin J. Kotch, of counsel and on the briefs).

David J. Dering argued the cause for respondent (Leary, Bride, Mergner & Bongiovanni, attorneys; David J. Dering, of counsel and on the brief).

PER CURIAM

Defendants Arch-Concept Construction, Inc. and its president Dusan Lazetic appeal from the Law Division's April 1, 2021 order enforcing the parties' settlement agreement. Judge Linda Grasso Jones entered the order after determining that defendants' performance of its obligations under the agreement was not excused by the doctrine of impossibility, that she could not rewrite the parties' agreement, and that the damages stipulated in the agreement were enforceable liquidated damages. On appeal, defendants argue that the doctrine of impossibility applies to its inability to perform under the settlement agreement, that the judge should have extended a forbearance as a matter of equity, and that the damages awarded under the parties' agreement and a consent judgment are an unenforceable penalty.

We have considered defendants' contentions in light of the record and the applicable legal principles. We conclude that defendants' arguments are without merit. We affirm substantially for the reasons expressed by Judge Grasso Jones in her written statement of reasons that she attached to her order.

A-2430-20

I.

The salient facts derived from the record are summarized as follows. Plaintiff Hartford Underwriters Insurance Company provided worker's compensation insurance to Arch-Concept from May 2012 through January 2016. On November 4, 2016, plaintiff filed a complaint against defendants to recover what it alleged were unpaid premiums based upon Arch-Concept understating its payrolls and misclassifying certain workers. It also sought relief under the New Jersey Insurance Fraud Prevention Act (IFPA), N.J.S.A. 17:33A-1 to -34. Plaintiff alleged that audits estimated defendants owed plaintiff $583,665 in unpaid premiums and that it was also entitled to treble damages for defendants' violation of the IFPA.

The parties agreed to settle plaintiff's claims pursuant to their May 31, 2018 written settlement agreement. The agreement acknowledged that the parties did not agree with each other's positions regarding the facts alleged in the complaint, however they settled due to the "costs and uncertainty" of litigating the matter. Their agreement required plaintiff to accept and defendants to pay $275,000 over twelve quarterly installments. In the event defendants breached the agreement, they agreed to the entry of a consent judgment in favor of plaintiff and against defendants in the amount of $425,000, less any payments

3

made under the agreement. The parties attached to the agreement a form of consent judgment signed by defendants that reflected the default provision in their agreement.

The agreement also stated that the parties were represented by counsel throughout the negotiation and preparation of the agreement. Moreover, should there be a dispute, the agreement was "not [to] be construed against any party."

Thereafter, defendants remitted payments as agreed until June 2020, when they requested the first of three consecutive requests for forbearances due to circumstances allegedly arising from the COVID-19 pandemic and its impact on defendants' business. Despite not being contractually obligated to do so under the settlement agreement,[1] plaintiff agreed to the first two requests, each resulting in a written forbearance agreement that did not otherwise alter the terms of the original settlement agreement, aside from extending the time to

---

[1] The agreement did include a provision for an annual forbearance. To that end, it stated that on prior notice to plaintiff,

> The [d]efendants, one (1) time every calendar year shall be allowed to request from [plaintiff] an additional fifteen (15) days of forbearance beyond the aforementioned grace period provisions, thus providing [d]efendants with a total of 35 days from the due date of the quarterly payment within which to make the prescribed quarterly payment without being in default.

A-2430-20

remit full payment then-due until the following quarter and adjusting the remaining installments accordingly. When plaintiff rejected the third request in December 2020, defendants remitted only a partial payment. Including the partial payment, defendants remitted a total of $200,374.33 by the end of 2020.

In response and pursuant to the agreement, plaintiff filed a motion to enforce the settlement, seeking judgment in the amount of $224,625.67 ($425,000 less $200,374.33 in payments remitted). Plaintiff supported its motion with its attorney's certification and exhibits, including the settlement agreement and consent judgment.

Defendants filed a certification from Lazetic in opposition that acknowledged they owed "$75,000 in payments under the settlement agreement," but that "Arch-Concept was unable to make the remaining . . . payments" because "of the pandemic and the shut-down of its business." There were no documents supporting that contention and no assertion that Lazetic, who signed the settlement agreement and form of consent judgment individually, was not able to make any of the required payments.

After considering oral arguments, Judge Grasso Jones entered an order granting plaintiff's motion, enforcing the settlement agreement, and awarding plaintiff $224,625.67. In her accompanying statement of reasons, the judge

explained defendants did not carry their burden to prove that the doctrine of impossibility excused their non-performance of the settlement agreement, that she could not change the terms of the agreement to require another forbearance, and that the damages provision was not an unenforceable penalty. Specifically, the judge concluded as follows:

> Defendants . . . do not provide clear and convincing evidence to relieve it of its performance obligations under the contract. The certification of Dusan Lazetic does not provide evidence that it was impossible for the company, or Lazetic himself (who is also an individual responsible party under the settlement agreement) to make the required payment. With reference to defendants' request that the court should as a matter of equity provide more time for defendants to make the required payment, even under the present COVID-19 pandemic circumstances the court cannot write for the parties a different agreement than they entered into. Certain federal and New Jersey state legislative and/or executive determinations have been made that provide equitable relief to certain persons, under certain circumstances (i.e., precluding eviction of residential tenants for non-payment of rent), but the court is not aware of any such provision saving defendants from their obligations under the settlement agreement – and no such provision has been brought to the court's attention. Finally, entering judgment in the amount of $224,625.67 would not result in the imposition of an inappropriate penalty provision against defendants. As set forth in the initial motion, and particularly in the reply papers filed by plaintiff, the amount initially sought by plaintiff from defendants was far greater than the amount plaintiff actually agreed to receive. While it would certainly have been in defendants' best

interests financially to have paid the amount due and owing under the settlement agreement, it cannot be said that the amount sought in this motion, which was agreed to by all parties who were represented by counsel, constitutes an impermissible or unenforceable penalty provision.

This appeal followed.

## II.

We consider defendants' contentions on appeal de novo because a judge's interpretation of a contract, including its enforceability, is a question of law entitled to de novo review. Holtham v. Lucas, 460 N.J. Super. 308, 317 (App. Div. 2019) (citing Wasserman's Inc. v. Middletown, 137 N.J. 238, 257 (1994)). In our review, we owe no deference to a trial judge's conclusions of law or the legal consequences that flow from established facts. Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414-15 (2018).

Applying that standard, we conclude Judge Grasso Jones properly determined that defendants did not provide any proof to excuse its non-performance under the doctrine of impossibility or that they were entitled to a reformation of the settlement agreement on equitable grounds. Moreover, we disagree with defendants that the negotiated settlement amount stipulated to by the parties was an unenforceable penalty.

7

At the outset, we recognize the strong public policy favoring settlement agreements. It is beyond cavil that "parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone." Gere v. Louis, 209 N.J. 486, 500 (2012) (quoting Impink ex rel. Baldi v. Reynes, 396 N.J. Super. 553, 563 (App. Div. 2007)). We will not therefore "rewrite," "vary, enlarge, alter[,] or distort [such agreements'] terms for the benefit of one [party] to the detriment of the other under the guise of judicial interpretation." Camden Bd. of Educ. v. Alexander, 181 N.J. 187, 197 (2004). For that reason, courts should not disturb an agreement absent "clear and convincing proof" that it is necessary to do so. Capparelli v. Lopatin, 459 N.J. Super. 584, 603 (App. Div. 2019) (quoting Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)).

One circumstance where a court may vacate a settlement agreement is where the doctrine of impossibility, also known as impracticability of performance, applies. Under that doctrine, "a party is excused from having to perform his contract obligations 'where performance has become literally impossible, or at least inordinately more difficult, because of the occurrence of a supervening event that was not within the original contemplation of the

contracting parties.'" Id. at 607 (quoting JB Pool Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n, 431 N.J. Super. 233, 246 (App. Div. 2013)).

For example, where a seller agrees to deliver goods to a buyer by a specific date and at a designated port, but the port is subsequently closed by quarantine regulations, the seller's duty to deliver the goods in such a manner is discharged. Restatement (Second) of Contracts, § 261 cmt. b, illus. 1 (Am. Law Inst. 1981).

However, the doctrine of impossibility is not applicable where the difficulty is "the personal inability of the promisor to perform." Sullivan v. Max Spann Real Est. & Auction Co., 465 N.J. Super. 243, 264 (App. Div. 2020) (quoting Connell v. Parlavecchio, 255 N.J. Super. 45, 49 (App. Div. 1992)). "[A] party cannot render contract performance legally impossible by its own actions." Ibid. (quoting Petrozzi v. City of Ocean City, 433 N.J. Super. 290, 303 (App. Div. 2013)).

Applying these guidelines, we conclude defendants' arguments that the doctrine of impossibility applies to their circumstances or that we should extend their time to make installment payments lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). Suffice it to say that we agree with Judge Grasso Jones' determination that defendants did not provide any proof to support that Arch-Concept was unable to remit installments as

9

promised because of a "supervening event that was not within the original contemplation of the contracting parties." See Capparelli, 459 N.J. Super. at 607. Moreover, Lazetic never certified that he was personally unable to make payment for any reason. Even if we concluded that the pandemic presented circumstances warranting application of the doctrine of impossibility, and we have not here done so, there was insufficient evidence that the event caused defendants to remain in default.

We also conclude that the damages awarded under the settlement agreement did not amount to a penalty. Stipulated damage clauses in commercial contracts between sophisticated parties are viewed as presumptively reasonable "liquidated damages" and courts will enforce such a clause unless the party challenging it proves they are instead an unreasonable "penalty." Metlife Cap. Fin. Corp. v. Wash. Ave. Assocs. L.P., 159 N.J. 484, 496 (1999).

We measure the reasonableness of stipulated damages against the "totality of the circumstances," including the "intention" and "bargaining power" of the parties, "the anticipated or actual loss caused by the breach," and "the difficulty in assessing damages." Sullivan, 465 N.J. Super. at 263 (quoting Metlife, 159 N.J. at 494-95). Essentially, stipulated damages clauses are meant to

compensate a party for the breach of another but not as a "shotgun" to compel the party to perform. Holtham, 460 N.J. Super. at 317-18.

Under these principles, defendants failed to demonstrate the consent judgment for $425,000 less payments made was a penalty. Defendants' argument focuses on only the fact that they are obligated to pay an additional $150,000 regardless of when their breach occurred, but this argument ignores the totality of the circumstances.

The parties here are sophisticated commercial entities represented by counsel, who settled defendants' exposure to over $2,000,000 in damages for a fraction of that amount. In the event of a breach, the parties negotiated a backstop meant to not only compensate plaintiff for the breach but also to limit defendants' residual exposure from a reinstatement of the complaint so as to ensure defendants were not required to litigate plaintiff's original claim.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2430-20